# EXHIBIT B

Amended Particulars of Claim pursuant to CPR r17.1(2)(b), CPR r17.4(2) and by Order of The Honourable Mr Justice Teare dated 6 March 2019
Re-Amended Particulars of Claim pursuant to CPR r17.1(2)(b), CPR r17.4(2) and by Order of The Honourable Mr Justice Andrew Baker dated 17 July 2019

**In the High Court of Justice**　　　　　　　　　　Claim No. CL-2018-000297
**Business and Property Courts of England & Wales**
**Commercial Court**

Between:

SKAT Skatteforvaltningen
(the Danish Customs and Tax Administration)

Claimant

and

**SOLO CAPITAL PARTNERS LLP (IN SPECIAL ADMINISTRATION) & OTHERS**
Defendants

**In the High Court of Justice**　　　　Claim No's. CL-2018-000404; CL-2018-000590
**Business and Property Courts of England & Wales**
**Commercial Court**

Between:

SKAT Skatteforvaltningen
(the Danish Customs and Tax Administration)

Claimant

and

**INDIGO GLOBAL PARTNERS LTD & OTHERS**
Defendants

---

### RE-AMENDED ~~AMENDED~~ PARTICULARS OF CLAIM

---

1. These are the Re-Amended ~~Amended~~ Particulars of Claim of the Claimant ("SKAT"). SKAT is a function of the Danish Government and is charged with the assessment and collection of Danish taxes. It brings these claims in a private capacity as a result of the civil wrongs set out herein.

2. In these Particulars of Claim:

    (a) References to the "**First Claim**" are to Claim Number CL-2018-000297; references to the "**Second Claim**" are to Claim Number CL-2018-000404; and references to the "**Third Claim**" are to Claim Number CL-2018-000590;

(b) References to the "**Alleged Fraud Defendants**" are to the 1st to 15th, 17th to 32nd and 34th to 63rd Defendants in the First Claim and to the 4th, 18th to 22nd and 25th Defendants in the Second Claim and the 8 Defendants in the Third Claim, against whom allegations of dishonesty are made by SKAT.

(c) References to the "**Non-Fraud Defendants**" are to the 33rd and 63rd to 69th Defendants in the First Claim and to the 1st to 3rd, 5th to 13th, 15th to 16th, 23rd and 24th Defendants in the Second Claim, against whom no allegations of dishonesty are made by SKAT;

(d) SKAT's claim against particular Defendants is supplemented by the facts and matters set out in the Schedules hereto;

(e) Where reference is made to any document, SKAT will rely at trial on the document in question for its full terms and effect.

## A   SUMMARY

3. In summary and as further particularised below and in the Schedules hereto:

(a) Under Danish law, a Danish company is obliged to withhold and pay to SKAT as withholding tax ("**WHT**") 27% of any dividend which it pays to shareholders. Certain foreign shareholders are entitled, under Danish law, to a refund of the tax withheld if they beneficially owned the shares and beneficially received the dividend (net of WHT) in respect of those shares on the relevant dates;

(b) Between August 2012 and July 2015, SKAT received numerous applications for the refund of withholding tax, as set out in Schedule 1 hereto (the "**WHT Applications**"). The WHT Applications were principally made by English based agents ostensibly on behalf of US pension funds and certain entities in Malaysia, UK or Luxembourg. SKAT accepted the WHT Applications and, as a result, paid out approximately DKK 12.6~~6573~~ billion (c. £1.512 billion),[1] alternatively DKK 9.713 billion (c. £1.159 billion), to the agents which had made the WHT Applications;

---

[1] These Particulars use an exchange rate of DKK 8.377:£1 for illustrative purposes.

2

(c) By each such WHT Application, the Alleged Fraud Defendants made (or assisted in or procured the making of) a number of representations, including that the applicant in question beneficially owned the shares and had beneficially received the dividend (net of WHT deducted) in respect of those shares on the relevant dates, and that the applications were genuine (i.e. were made with an honest belief in the facts stated in them) (the "**WHT Representations**");

(d) The Alleged Fraud Defendants knew that the WHT Representations were false (or they were reckless as to whether they were true or false). The persons on whose behalf the WHT Applications were purportedly made (the "**WHT Applicants**") did not beneficially own the shares in question and/or had not beneficially received the dividends on the relevant dates and/or the Danish company had not withheld tax in respect of such dividend. They were therefore never entitled to any refund of WHT;

(e) The WHT Applications were made as part of a fraudulent scheme (or schemes) by which the Alleged Fraud Defendants: (i) identified or procured or assisted in the formation of seemingly eligible applicants for WHT refunds; (ii) manufactured fictitious and/or sham transactions and/or carried out illegitimate trading for the purpose of facilitating WHT Applications; (iii) made or procured or assisted in the making of the WHT Applications, including the WHT Representations; and (iv) dealt with the sums paid by SKAT in reliance on said representations in such a way as to conceal and/or launder and/or distribute the proceeds of the WHT Applications;

(f) Pending disclosure, the best particulars that SKAT can give are that, of the money paid out by SKAT in reliance on the WHT Representations, at least c.DKK6.715 billion (or c.£802 million) was ultimately received by the Alleged Fraud Defendants (not the purported WHT Applicants), through a complex web of transactions, which included the extensive use of offshore vehicles. SKAT infers that the intention of such transactions was to launder the proceeds of the monies, which the Alleged Fraud Defendants had deceived SKAT into paying out, and share them amongst themselves;

3

(g) The primary individual responsible for the fraudulent scheme (or the primary fraudulent scheme) was Mr Sanjay Shah (the 3⁴ᵗʰ Defendant in the First Claim) and entities controlled by him, principally:

(i) Solo Capital Partners LLP (the 1ˢᵗ Defendant in the First Claim) and related companies including the 2ⁿᵈ to 4ᵗʰ, 15ᵗʰ, 24ᵗʰ and 30ᵗʰ Defendants in the First Claim (collectively, the "**Solo Group Companies**");

(ii) Elysium Global Limited ("**Elysium Global**", the 48ᵗʰ Defendant in the First Claim) and related companies including the 17ᵗʰ, 35ᵗʰ, 46ᵗʰ, 47ᵗʰ, 49ᵗʰ, 50ᵗʰ, 53ʳᵈ Defendants in the First Claim and the 4ᵗʰ, 18ᵗʰ, 19ᵗʰ, and 21ˢᵗ Defendants in the Second Claim (collectively, the "**Elysium Group Companies**").

(h) The other Alleged Fraud Defendants were joint tortfeasors and/or co-conspirators with Mr Shah and the Solo Group and Elysium Group Companies;

(i) SKAT brings its claims in English, alternatively Danish law. In respect of the Alleged Fraud Defendants, the claims are based on their dishonest participation in the WHT Representations and/or the WHT Scheme and/or their receipt of proceeds of the fraud;

(j) Further, SKAT claims against the Non-Fraud Defendants in respect of their negligent participation in the WHT Scheme and/or their receipt of the proceeds of the fraud.

## B    DEFENDANTS

4. SKAT brings the claims set out in these Particulars of Claim against the Defendants to the First to Third Claims. The details of the Defendants and their role in the alleged wrongdoing (including the basis on which the knowledge, acts or intention of individual Defendants are to be attributed to corporate Defendants) are recorded in Schedule 5 to these Particulars of Claim. SKAT reserves the right to update these particulars, in particular following receipt of disclosure and/or evidence. In particular, SKAT notes that (at the date of these Particulars) Mr Sanjay Shah and his companies

4

have failed properly to comply with the proprietary disclosure orders made by the Court.

5. In summary, the Defendants fall into the following categories:

   (a) Those Defendants which acted as tax reclaim agents and which made WHT Applications to SKAT, purportedly on behalf of WHT Applicants: Goal TaxBack Limited ("**Goal**", the 66th Defendant in the First Claim), Koi Associates Limited (in liquidation) ("**Koi**", the 67th Defendant in the First Claim), Syntax GIS Limited (in liquidation) ("**Syntax**", the 68th Defendant in the First Claim and the 22nd Defendant in the Second Claim), Acupay System LLC ("**Acupay**", the 3rd Defendant in the Second Claim) (collectively, the "**Agents**") and Global Equities GmbH ("**Global**", the 24th Defendant in the Second Claim);

   (b) Those Defendants which provided "credit advice" notes (or similar) which were included in the WHT Applications as purported evidence that the WHT Applicants beneficially owned the relevant shares and had beneficially received the relevant dividends at the relevant dates (net of WHT deducted): Solo Capital Partners LLP ("**SCP**", the 1st Defendant in the First Claim), Telesto Markets LLP ("**Telesto**", the 2nd Defendant in the First Claim), Old Park Lane Capital Ltd (**"Old Park Lane"**, the 3rd Defendant in the First Claim), West Point Derivatives Ltd ("**West Point**", the 4th Defendant in the First Claim), North Channel Bank Gmbh ("**North Channel**, the 33rd Defendant in the First Claim), Salgado Capital ("**Salgado**", the 62nd Defendant in the First Claim), ED&F Man Capital Markets Ltd (**"ED&F Man"**, the 69th Defendant in the First Claim), Indigo Global Partners Ltd[2] ("**Indigo**", the First Defendant in the Second and Third Claims) and Lindisfarne Partners LLP ("**Lindisfarne**, the Second Defendant in the Second Claim) (collectively, the "**Custodians**");

   (c) Those Defendants which SKAT believes were party to the fraud and which either received the traceable proceeds of the sums which SKAT paid out or were the shareholders, officers and/or controllers of entities which received such proceeds i.e. the Alleged Fraud Defendants; and

---

[2] Then called Indigo Securities Ltd.

(d) Those Defendants which were themselves WHT Applicants and on whose behalf the Agents purportedly made WHT Applications (the 64th and 65th Defendants in the First Claim and the 10th to 14th Defendants in the Second Claim) and the officers or trustees thereof (the 5th, 6th, 8th and 9th Defendants in the Second Claim).

## C   DIVIDEND WHT REGIME

6. Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are then paid on to the relevant tax authority.

7. Under section 65 of the Danish Withholding Tax Act (enacted by Consolidated Act no. 1403 of 7 December 2010) 1967, Danish companies are obliged to withhold 27% of any dividend declared as WHT and only pay to the shareholder the dividend net of WHT. The withheld amount is paid by the company to SKAT.

8. Under section 69B(1) of the Danish Withholding Tax Act (enacted by Act no. 591 of 18 June 2012) 1967, a shareholder in respect of whose shares part of a dividend has been withheld as WHT may apply to SKAT for the repayment of WHT if any part of the tax was not due.

9. If a shareholder is resident in the United States, Malaysia, Canada, the United Kingdom or Luxembourg, then the following double taxation treaties provide that Denmark may not tax dividends received by the shareholder at all or may only do so at a rate which is less than 27%. In such circumstances, the shareholder may have a right to a refund of WHT. In particular:

   (a) In respect of the United States, Articles 10(3)(c) and 22(2)(e) of the Convention between the Government of the United States of America and the Government of the Kingdom of Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income (as amended by the Protocol with effective date 1 January 2001) provides that if the beneficial owner of dividends is a pension fund resident in the United States, Denmark may not tax dividends paid by a Danish company to that pension fund at all.

(b) In respect of Malaysia, Article 10 of the Agreement between the Government of Malaysia and the Government of the Kingdom of Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income provides that if dividends are paid by a Danish company to a Malaysian resident who is subject to Malaysian tax in respect thereof, Denmark may not tax dividends paid by that Danish company to that Malaysian resident at all;

(c) In respect of Canada, Article 10(1) and 30(3) of the Agreement between the Government of Canada and the Government of the Kingdom of Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income (effective date 2 March 1998) provides that if the beneficial owner of the dividends is resident in Canada, Denmark may not tax dividends received by a resident of Canada at a rate above 15%;

(d) In respect of the United Kingdom, Article 10(2)(b) and Section 4 of the Convention between the Government of the Kingdom of Denmark and the Government of the United Kingdom of Great Britain and Northern Ireland for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and Capital Gains (as amended by the Protocols signed on 1 July 1991 and 15 October 1996) provides that if the beneficial owner of the dividends is resident in the United Kingdom, Denmark may not tax dividends received by a resident of the United Kingdom at a rate above 15%; and

(e) In respect of Luxembourg, Articles 10 and 23 the Convention between the Government of the Grand Duchy of Luxembourg and the Government of the Kingdom of Denmark for the Avoidance of Double Taxation and the Establishment of Rules for Reciprocal Administrative Assistance with Respect to Taxes on Income and Capital Gains (signed 17 November 1980) provides if the beneficial owner of the dividends is resident in Luxembourg, Denmark may not tax dividends received by a resident of Luxembourg at a rate above 15%.

10. At all relevant times, a shareholder in a Danish company that sought a refund of WHT had to complete (or arrange to have completed on its behalf) a form produced by

SKAT entitled "Claim to Relief from Danish Dividend Tax", with reference number 06.003 ENG (the "**Tax Relief Form**"). The Tax Relief Form required the following:

(a) A declaration by the person completing the form that they were doing so in their capacity "as beneficial owner" or "on behalf of the beneficial owner";

(b) The sum in Danish Kroner in respect of which a refund was sought;

(c) The name, address and email address of the "Beneficial Owner";

(d) If the claim was made on behalf of the beneficial owner, a power of attorney giving authority to the person completing the Tax Relief Form;

(e) Documentation regarding "dividend advice(s)"; and

(f) Certification that "*the beneficial owner is covered by the Double Taxation Convention*" between Denmark and the relevant foreign jurisdiction.

11. The Tax Relief Form would be signed by the person completing the form.

12. If SKAT accepted an application for a refund of dividend WHT, it would make payment of the sums claimed to the account specified in the Tax Relief Form.

**D    THE WHT APPLICATIONS**

13. SKAT's claim is made in respect of the WHT Applications made between August 2012 and July 2015 by the Agents and Global.

14. The Agents and Global purportedly made the WHT Applications on behalf of 306 foreign WHT Applicants, being: (a) 277 US pension funds: (b) 24 Malaysian companies; (c) 3 Canadian pension funds; (d) a British pension fund (Europa LLP Executive Pension Scheme, the 64th Defendant in the First Claim); and (e) a Luxembourg company (Khajuraho Equity Trading Sarl, the 65th Defendant in the First Claim). A full list of the WHT Applicants is at Schedule 1 to these Particulars of Claim.

15. The WHT Applications that were purportedly made on behalf of WHT Applicants resident in the US, Canada and Malaysia were in respect of all the tax withheld.

8

16. The WHT Applications that were purportedly made on behalf of WHT Applicants resident in the United Kingdom and Luxembourg were in respect of the difference between the 27% tax withheld and the 15% maximum tax rate under the relevant double taxation treaty.

17. Each WHT Application was made up of the following documents:

    (a) A Tax Relief Form completed by the Agents <u>or Global</u> on behalf of the WHT Applicants;

    (b) A covering letter from the relevant Agent <u>or Global</u>;

    (c) One or more "credit advice" notes (in the case of SCP, Telesto, West Point, Salgado, Indigo and Lindisfarne), "dividend credit" (in the case of North Channel Bank), "income advice" (in the case of Old Park Lane) or "tax voucher" (in the case of ED&F Man) that were produced by the Custodians (the "**Credit Advice Notes**"). The Credit Advice Notes purported to record that:

        i) a specific number of shares in a specific Danish company were held for the named WHT Applicant (in most cases, specifying the "ex-date", being the date before which the share must be owned in order to be entitled to a dividend on the "payment date");

        ii) a specific dividend had been received for the account of the named WHT Applicant (in most cases, specifying the "payment date", being the date on which dividends are paid); and

        iii) such dividend had been received by the WHT Applicant net of a specific amount of tax that had been withheld by the named Danish company;

    (d) A document from a foreign authority certifying that the WHT Applicant was resident in the relevant foreign jurisdiction.

18. The WHT Applications were made in respect of purported shareholdings in 21 listed Danish companies, which belonged to the OMX Copenhagen 20 Index in Denmark, as set out in Schedule 1 hereto.

## E    THE WHT REPRESENTATIONS

### E1. The Agent Representations and the Custodian Representations

19. The WHT Applications contained the following express, alternatively implied, representations (collectively, the "**Agent Representations**"):

    (a) The WHT Applicant was the beneficial owner of the shares in the Danish company described in the Credit Advice Note (on the day before the ex-date recorded therein, where stated); and/or

    (b) The WHT Applicant had beneficially received the dividend, net of tax, described in the Credit Advice Note (on the payment date described therein, where stated); and/or

    (c) The dividend had been paid to the WHT Applicant, after the Danish company had withheld the tax described in the Credit Advice Note; and/or

    (d) The WHT Application was a genuine application (i.e. made with an honest belief as to the truth of the statements of fact in it) to reclaim tax deducted from a dividend paid to the WHT Applicant by the named Danish company.

20. A reasonable person in the position of SKAT would have understood (and SKAT in fact understood) the Agent Representations to have been made, given: (i) the terms of the Tax Reclaim Form completed by the Agents and Global on behalf of the WHT Applicants; (ii) the terms of the covering letter provided by the Agents and Global; and (iii) the terms of the Credit Advice Note(s) provided with the Tax Reclaim Form; and (iv) the fact that such documents were being submitted to SKAT as part of a WHT Application seeking to reclaim WHT deducted by a Danish company in respect of a dividend purportedly received by the WHT Applicant.

21. Further, the Credit Advice Notes themselves contained the following representations (together, the "**Custodian Representations**"):

**[Pages Intentionally Omitted for Length. To be Provided at the Court's Request.]**