# Exhibit 7, Part 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION<br><br>This document relates to:  All cases. | MASTER DOCKET<br><br>18-md-2865 (LAK) |

## DECLARATION OF RANA SHASHAA

I, Rana Shashaa, hereby declare as follows:

1.      Since 1st June 2019, I have been a Partner with Deloitte Professional Services (Dubai) Limited ("Deloitte").

2.      I submit this Declaration to document the execution of search order (the "Search Order") granted in *SKAT (the Danish Customs and Tax Administration) v. Elysium Global (Dubai) Limited & Elysium Properties Limited* [2018] DIFC CFJ, Claim No. CF1-048-2018 (the "DIFC Proceeding"), including the collection and imaging of documents obtained from the respondents (the "Elysium Documents"), and the subsequent production of the Elysium Documents to the parties in *In re Customs and Tax Administration of the Kingdom of Denmark (Skatteforvaltningen) Tax Refund Scheme Litig.*, No. 1:18-md-2865-LAK (S.D.N.Y.), the multi-district litigation pending in the U.S. District Court for the Southern District of New York (the "MDL").

3.      Deloitte maintains a database of the Elysium Documents on a Relativity e-discovery platform (the "Relativity Platform").

4.      I make this Declaration based on my personal knowledge, records of Deloitte, or dialog with other employees of Deloitte, Affidavits submitted by Pinsent Masons LLP, SKAT's legal representatives in Dubai International Finance Centre Courts, and the reports submitted by the Supervising Legal Representative to Dubai International Finance Centre Courts, attached hereto as Exhibits.

**A.      Search Order and Privilege Review Orders**

5.      On June 27, 2018, Justice Sir Jeremy Cooke granted Skatteforvaltningen's ("SKAT") application for a search order against respondents in the DIFC Proceeding.  The Search Order provided that Elysium Global (Dubai) Limited (the "First Respondent") must permit a search of the First Respondent's premises at Unit OT 16-32, Level 16, Central Park Offices, DIFC, Dubai, PO Box 506699, UAE (the "Premises") and any other locations identified pursuant to the Search Order, for the items listed in Schedule B to the Search Order.  (Search Order ¶¶ 6-7, 18.)  Attached hereto as "Exhibit 1" is a true and correct copy of the Search Order.

6.      On July 31, 2018, Justice Sir Jeremy Cooke issued an order (the "July 31 Order") that outlined the process by which an independent third party, known as the Supervising Legal Representative ("SLR"), must conduct a privilege review of the documents obtained pursuant to the Search Order.  Attached hereto as "Exhibit 2" is a true and correct copy of the July 31 Order.

7.      On August 12, 2018, Justice Sir Jeremy Cooke issued an order (the "August 12 Order") that further detailed the process of the privilege review to be conducted of the Elysium Documents, and granted Deloitte access to certain remote servers.  Attached hereto as "Exhibit 3" is a true and correct copy of the August 12 Order.

**B.      Execution of the Search Order**

8.      Commencing on June 28, 2018 and concluding on July 9, 2018, Deloitte engaged

in the search of the Premises pursuant to the Search Order.

9.      The search party was comprised of Philip Punwar, partner at Baker Botts LLP and

the Supervising Legal Representative (the "SLR"); Pinsent Masons LLP, SKAT's legal

representatives; and the below individuals from Deloitte, with their roles at Deloitte at the time,

who were present at various points in time during the search:

        a.   Darren Mullins, Director and Head of Forensic Technology team;

        b.   David Townsend, Associate;

        c.   Paul Wright, Assistant Director;

        d.   Terence Sequiera, Manager;

        e.   Leons Mathews, Senior Associate; and

        f.   Aamer Waheed, Assistant Director.

10.      Deloitte inspected and forensically imaged  internal hard drives from desktops

and laptops, USB thumb drives, mobile phones, Dropbox folders, email data  from Microsoft

O365, and mapped network data ("Electronic Material") from the Premises and from cloud based

repositories (where access was controlled by the Company). These were processed and uploaded

to the Relativity Platform.  Deloitte employed forensically sound and industry-accepted  imaging

protocols and practices to create forensic images of the Electronic Material, in accordance with

the United Kingdom Association of Chief Police Officers ("ACPO") guidelines.  Attached hereto

as "Exhibit 4" is a true and correct copy of the complete list of electronic devices belonging to or

3

used by the First Respondent that Deloitte removed from the Premises and/or forensically imaged during the course of the search.[1]

11.      Deloitte (along with Pinsent Masons LLP) assisted in the search of hardcopy documents ("Hardcopy Material") on the Premises.  Attached hereto as "Exhibit 5" is a true and correct copy of the complete list of the seized Hardcopy Material.

12.      Deloitte removed the Hardcopy Material from the Premises. Under the supervision of Deloitte, Xerox Emirates LLC ("Xerox") scanned the documents. Deloitte uploaded the scanned data to the Relativity Platform.

13.      Deloitte created and maintained a catalogue of all Hardcopy Material that was removed from the premises. Once scanned, this data was forensically imaged using industry-accepted scanning protocols and practices to ensure the integrity of the scanned data was maintained.  A Pinsent Masons LLP representative returned the Hardcopy Material to the Premises on July 5, 2018.

14.      Deloitte took appropriate steps to ensure that the original Electronic Material, Hardcopy Material and the imaged data were securely maintained throughout the search and imaging processes.

**C.      Additional Material**

**Hard Drives**

15.      On July 17, 2018, the First Respondent delivered to Deloitte four hard drives that a representative of the First Respondent  had allegedly removed during the search of the Premises.

---

[1] As of the conclusion of the search on July 9, 2018, the forensic imaging process of the Network Share server was still ongoing.  Deloitte began the forensic imaging process of the Network Share from Shah's laptop on the Premises and then took the laptop into its custody to continue forensically imaging the Network Share.

16.    Deloitte forensically imaged the data contained on three of the four hard drives, employing forensically sound and industry-accepted imaging protocols and practices to ensure the integrity of the images.

17.    The fourth hard drive with serial number WXF1E6526KJ7 was not able to be imaged as it was encrypted with "WD External Drive Hardware Encryption" and the password was unknown. With this type of encryption, password cracking software was not able to be used. The drive remained in Deloitte custody until February 25, 2021 when it was handed over to Pinsent Masons in Dubai.

18.     On July 24, 2018, two further hard drives were provided to Deloitte. One of these was a work product created by the SLR whilst the other contained backup data from the First Respondent's servers.

19.    Deloitte imaged the data contained on both of these drives, employing forensically sound and industry-accepted imaging protocols and practices to ensure the integrity of the imaged data.

20.    Deloitte incorporated the forensic images of the data from the three hard drives removed from the Premises and the two additional hard drives into the Electronic Material.

21.    Deloitte took appropriate steps to ensure that the original data contained on the imaged hard drives and the forensic images created were securely maintained throughout the imaging process.

22.    Deloitte took appropriate steps to secure and maintain the integrity of the fourth hard drive, whilst in Deloitte's custody.

**Remote Servers**

23.     Pursuant to the August 12 Order, Deloitte was granted access to certain remote servers that stored information belonging to the First Respondent.  (Ex. 3, August 12 Order ¶¶  8-

24.     These were virtual or cloud-based servers which were either hosted by or where access was provided through the third parties, "BIOSME", "Informedix" and "GoDaddy". They consisted of the following:

   a.   Domain Controller and File Server ("DC-FS");

   b.   Doccept Document Management System ("DMS');

   c.   Sage Server

   d.   Google Drive;

   e.   Mimecast for email archiving; and

   f.   Microsoft O365 hosted with GoDaddy.

25.     Deloitte were unable to forensically preserve the data on the DC-FS, DMS, Sage Server or Google Drive as the remote connection provided by the third party BIOSME was too slow to create a copy of the data. Instead, BIOSME created Virtual Machine Disk ("VMDK") images of the DC-FS, Sage Server and DMS and these were copied to hard drives (provided by Deloitte). In addition, BIOSME downloaded the Google Drive data to an additional external hard drive, provided by Deloitte, in their data center. This data was then forensically imaged by Deloitte.

26.     Deloitte liaised with BIOSME to ensure that the VMDK images were created in a forensically sound manner and the integrity of the server data was maintained throughout the process.

27.     For the email data from Mimecast and O365, Deloitte were provided with administrator credentials to download and create forensic images of the data, employing forensically sound and industry-accepted imaging protocols and practices to ensure the integrity of the preserved data..

28.     Deloitte incorporated the forensic images of the data from the remote servers and cloud-based data sources into the Electronic Material.

29.     Deloitte took appropriate steps to ensure that the original data contained on the remote servers and the forensic image data were securely maintained throughout the imaging process.

**Black Box LLC Documents**

30.     During the search of the Premises, the First Respondent failed to disclose that certain of its hardcopy documents were located at an off-site storage facility, Black Box LLC (the "Black Box Material").

31.     The Black Box Material was delivered from Black Box LLC to the SLR in two batches, on July 30, 2018 and August 1, 2018.

32.     The SLR provided SKAT's legal representatives with the subset of the Black Box Material that he, or appropriate persons appointed by him, determined not to be privileged and did not receive objection from the First Respondent regarding the determination of privilege.

33.     Under the supervision of Deloitte, Xerox scanned non-privileged Black Box Material at the premises of Pinsent Masons LLP. Following scanning, Deloitte uploaded the non-privileged Black Box Material to the Relativity Platform

34.     Under the supervision of Deloitte, Xerox scanned privileged Black Box Material at the SLR's offices. Following scanning, Deloitte uploaded the privileged Black Box Material to the Relativity Platform.

35.     Deloitte took appropriate steps to ensure that the original Black Box Material and the images were securely maintained throughout the scanning and upload process.

**D.     Privilege Review**

36.     Pursuant to the July 31 Order,  Deloitte established a team of individuals (the "Privilege Search Team") to work under the supervision of SLR and the First Respondent to provide technical support in the review of the Electronic Material and Hardcopy Material to identify any privileged materials.  (Ex. 2, July 31 Order ¶ 7.)

37.     The Privilege Search Team processed the Electronic Material through using Nuix software and thereafter uploaded it into the Relativity Platform into the Relativity databases created for the Privilege Review ("Privilege Database"). The Privilege Search Team then applied the search parameters set out by SLR and the First Respondent to identify any privileged materials.

38.     The SLR, or appropriate persons appointed by him, reviewed the Hardcopy Material for privilege.  The SLR, or appropriate persons appointed by him, provided the documents determined to be privileged to the Privilege Search Team.  The Privilege Search Team uploaded these documents in the Relativity Platform, but did not release them to SKAT's legal representatives.

39.     Deloitte released material determined to be non-privileged to SKAT's legal representatives, acting under the instructions of SLR and the First Respondent, into the the Relativity database created for the SKAT's Review ("Non-Privilege Database").

**E.    Production of Elysium Documents**

40.    Deloitte has to date prepared productions of 11 tranches of Elysium Documents, comprised of Electronic Material, Hardcopy Material, and Black Box Material from the Non-Privilege Database.  The bates number ranges of the tranches are below:

a.  Tranche 1: ELYSIUM-00000001 - ELYSIUM-06020721

b.  Tranche 2: ELYSIUM-06020722 - ELYSIUM-08295220

c.  Tranche 3: ELYSIUM-08295221 - ELYSIUM-08310513

d.  Tranche 4: ELYSIUM-08310514 - ELYSIUM-08318601

e.  Tranche 5: ELYSIUM-08318602 - ELYSIUM-09351667

f.  Tranche 6: ELYSIUM-09351668 - ELYSIUM-09443707

g.  Tranche 7: ELYSIUM-09443708 - ELYSIUM-09628596

h.  Tranche 8: ELYSIUM-09628597 - ELYSIUM-10218827

i.  Tranche 9: ELYSIUM-10218828 - ELYSIUM-10371702

j.  Tranche 10: ELYSIUM-10371703 - ELYSIUM-10403525

k.  Tranche 11: ELYSIUM-10403526 - ELYSIUM-10406421

33.    These productions are the material determined to be non-privileged through the privilege review process ordered by the Court in the DIFC Proceeding.

34.     The productions take the form of either (i) hard drive shipped to SKAT's MDL counsel, Hughes Hubbard & Reed LLP ("HHR"); (ii) hard drive shipped to counsel for MDL defendants; (iii) or password-protected compressed file type sent via secure link to HHR for transmittal to counsel for MDL defendants.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  Dubai, United Arab Emirates
        November 26, 2021

_____
Rana Shashaa