# Exhibit 142

Date:            [•]

From:            [Investor] ("**Party A**")

To:              [Pension Plan] ("**Party B**")

Attention:

Re:              **EUR Equity Forward Contract**

Dear Sirs,

The purpose of this letter agreement is to set forth the terms and conditions of the Transaction entered into between [Investor] ("**Party A**") and [Pension Plan] ("**Party B**") on the Trade Date specified below (the "**Transaction**").

The definitions and provisions contained in the 2002 ISDA Equity Derivatives Definitions (the "**Equity Derivatives Definitions**") and the 2006 ISDA Definitions (together with the Equity Derivatives Definitions, the "**Definitions**") as published by the International Swaps and Derivatives Association, Inc. are incorporated by reference herein. In the event of any inconsistency between the Definitions and this Confirmation, this Confirmation will govern.

This Confirmation constitutes a "**Confirmation**" as referred to in, and supplements, forms part of and is subject to, the ISDA Master Agreement dated as of [•]as amended and supplemented from time to time, between the parties (the "**Agreement**").

All provisions contained in the Agreement govern this Confirmation except as expressly modified below.

The terms of the particular Transaction to which this Confirmation relates are as follows:

1.  **General Terms:**

    Trade Date:              [•]

    Effective Date:          [•]

    Cut-off Date:            [•]

    Termination Date:        The earlier of:

                             (a)    the Final Settlement Date; and

                             (b)    the Long Stop Date,

                             subject to adjustment in accordance with the

|  |  |
|---|---|
|  | Modified Following Business Day Convention. |
| Long Stop Date: | [•], the date falling on the 4th anniversary of the Effective Date (irrespective of whether any Disputes are outstanding). |
| Final Settlement Date: | Shall be the first Business Day, as determined by the Calculation Agent, on which no Disputes are outstanding in respect of any Reference Transaction and which is not less than 1 Business Days after the final Reference Transaction Discharge Date in respect of all of the Reference Transactions. |
| Calculation Agent: | [•] |
| Business Day Convention: | Modified Following |
| Business Days: | London, New York, Luxembourg and Frankfurt |

2. **Fixed Payments:**

|  |  |
|---|---|
| Fixed Rate Payer: | Party A |
| Fixed Rate Payer Payment Date: | In respect of each Reference Transaction, the date specified in respect of such Reference Transaction in Schedule 1. |
|  | Notwithstanding any other provisions in the Agreement to the contrary, where Party A fails to make a payment of the Fixed Amount in respect of a Reference Transaction on the relevant Fixed Rate Payer Payment Date, such failure to pay shall not result in an Event of Default and the relevant Reference Transaction shall be deemed to be deleted from Schedule 1 and Party A and Party B shall have no further obligations and liabilities in respect of such Reference Transaction. |
| Fixed Amount: | Means, in respect of each Reference Transaction, the Reference Transaction Collateral Amount (set out in Schedule 1), subject to a reduction in accordance with the Fixed Amount Repayment provision. |
| Fixed Amount Repayment: | The Calculation Agent shall determine on the Cut-off Date or any day before the Cut-off Date as agreed by Party A and Party B whether the Reference Transactions listed in Schedule 1 have been entered into. If the Calculation Agent |

CONFIDENTIAL / PRIVILEGED – SUBJECT TO 502(d) ORDER                                    WH_MDL_00394153

determines that one or more Reference Transaction(s) were not entered into (each such Reference Transaction being a "**Failed Reference Transaction**"), then the Calculation Agent shall notify each of the Parties and Party B shall pay to Party A on the third Business Day after such notice (the "**Fixed Amount Repayment Date**"), in respect of each Failed Reference Transaction, an amount equal to the Reference Transaction Collateral Amount for such Failed Reference Transaction (the amount being the "**Fixed Amount Repayment Amount**"). If the Calculation Agent determines, in respect of any or all Reference Transaction, on any day after the Effective Date but before the Cut-off Date that the terms (other than the Applicable Spread) are required to be varied, then the Calculation Agent shall issue to the Parties a Schedule 1 Variation Notice. If as a result of such variation, Party A has paid in respect of a Reference Transaction on the Effective Date a Fixed Amount in excess of the amount that would have been required to be paid had the relevant Reference Transaction been entered into on such varied terms on the Effective Date, then, Party B will pay to Party A an amount as determined by the Calculation Agent and notified in the Schedule 1 Variation Notice (the "**Fixed Amount Rebate Amount**") on the third Business Day after the issue of the Schedule 1 Variation Notice (the "**Fixed Amount Rebate Amount Date**").

If Party A in its absolute discretion determines to terminate a Reference Transaction (a "**Terminated Transaction**"), it may do so on any day up to the third Business Day preceding the Fixed Rate Payer Payment Date for such Terminated Transaction, by notifying Party B of its determination. No Fixed Amount shall be payable in respect of the Terminated Transaction and in the event that a Fixed Amount has already been paid in respect of the Terminated Transaction, an amount equal to such Fixed Amount (the "**Termination Amount**") shall be repaid to Party A by no later than the third Business Day after Party A's notice of termination is effective.

Following the payment of the Fixed Amount Repayment Amount and/or Fixed Amount Rebate Amounts, the Fixed Amount in respect of a Reference Transaction for the purposes of this Transaction shall be equal to (a) the Fixed Amount

on the Fixed Rate Payer Payment Date in respect of such Reference Transaction minus (b) the aggregate of (i) Fixed Amount Repayment Amount in respect of such Reference Transaction; (ii) the Fixed Amount Rebate Amount in respect of such Reference Transaction; and (iii) the Termination Amount in respect of such Reference Transaction (if any).

**3.     Floating Payments:**

Floating Rate Payer:                    Party B

Floating Rate Payer Payment Dates:      In respect of each Reference Transaction, the earlier of (a) the Reference Transaction Discharge Date in respect of such Reference Transaction and (b) the Termination Date.

Reference Transaction Discharge Date:   Subject to the Dispute provisions below, means, in respect of a Reference Transaction, the first Business Day on which the Calculation Agent determines that all Payments in respect of such Reference Transaction have been made and/or it is unlikely that further Payments will be made.

Where Party B has received a Payment in respect of a Reference Transaction after the Reference Transaction Discharge Date, such Payment shall be conclusive evidence that a Reference Transaction Discharge Date has occurred and that no Underperformance Event in respect of the Reference Transaction has occurred; in these circumstances the determination of the Calculation Agent shall be binding and final and not be subject to the Dispute provisions (provided that any determination by the Calculation Agent that an Underperformance Event has occurred shall be deemed to be a determination that no Underperformance Event has occurred).

Payments:                               Means, in respect of a Reference Transaction:

(i)     net payments received in respect of the Specified Future Contract;

(ii)    payments or distributions in respect of the Reference Security; and

(iii)   payments received as a result of any relevant double tax treaty applicable to a Reference Transaction.

CONFIDENTIAL / PRIVILEGED – SUBJECT TO 502(d) ORDER                                      WH_MDL_00394155

| | |
|---|---|
| Floating Amount: | In respect of each Reference Transaction, the Floating Amount payable (if any) by Party B to Party A on: |
| | (a) the Reference Transaction Discharge Date in respect of a Reference Transaction, shall be equal to the Reference Transaction Performance Amount; and |
| | (b) the Termination Date shall be equal to zero. |
| Reference Transaction Performance Amount: | Means, in respect of a Reference Transaction, on the Reference Transaction Discharge Date for the Reference Transaction: |
| | (a) if no Underperformance Event has occurred, an amount equal to the Reference Transaction Collateral Amount multiplied by the Applicable Spread; and |
| | (b) if an Underperformance Event has occurred, zero. |
| Underperformance Event: | Subject to the Dispute provision, shall occur, in respect of a Reference Transaction, where the Calculation Agent has determined that having regard to the Payments such Reference Transaction has resulted (directly or indirectly) in a net loss to Party B. |
| Applicable Spread: | In respect of a Reference Transaction, the Applicable Spread set out in Schedule 1. |

**4. Dispute**

Where any provisions hereunder (including without limitation the provision of any definitions incorporated therein) provides or contemplates that the Calculation Agent will make any calculation, determination, specification, or choice, or is otherwise granted discretion of any kind, then each such provision shall for all purposes be considered to be amended hereby to provide that any such calculation, determination, specification, or choice shall be subject to review by the other party to the Transaction in question, and no such calculation, determination, specification, or choice shall be considered binding or final at any time when such other party has in good faith and based on commercially reasonable grounds challenged, or disputed within five Local Business Day of being notified of such calculation, determination, specification, or choice.  In any such case, the amount of the relevant calculation that is not subject to dispute shall be paid or delivered, as the case may, as scheduled for the relevant Transaction, and the parties will negotiate in good faith to resolve such dispute and, failing such a resolution within five Local Business Day of the initial challenge or dispute, the parties will negotiate in good faith to agree on an independent third party that would qualify as a Reference Market-maker (the "***Substitute Calculation Agent***") that will make such calculation, determination, specification, or choice.  If they cannot so agree within five Local

CONFIDENTIAL / PRIVILEGED – SUBJECT TO 502(d) ORDER                    WH_MDL_00394156

Business Day, then the parties will promptly choose an independent third party that would qualify as a Reference Market-maker and instruct them to agree on a third independent third party that would qualify as a Reference Market-maker that will make such calculation, determination, specification, or choice, and that party will be the Substitute Calculation Agent and will be instructed to independently make the relevant calculation, determination, specification, or choice within three Local Business Days of its selection. Any calculation, determination, specification, or choice pursuant to this section by a Substitute Calculation Agent will be binding in the absence of manifest error. The costs of any Substitute Calculation Agent called upon to make such determination will be borne equally by the parties.

5. **Additional Definitions**

"*Reference Transaction Collateral Amount*" means, in respect of the Reference Transaction, the EUR amount set out in Schedule 1 or the Schedule 1 Variation Notice in the column "Reference Transaction Collateral Amount".

"*Reference Transaction*" means in respect of the Reference Security:

(a) the Reference Security (held as a result of the physical settlement of any Specified Future Contract) in the volume as up to the Share Quantity; and

(b) the aggregate of the Specified Future Contract(s) referencing such Reference Security.

"*Reference Security*" means the security listed in Schedule 1 or Schedule 1 Variation Notice hereto.

"*Share Quantity*" means the maximum quantity of the Reference Security set out in Schedule 1 or the Schedule 1 Variation Notice in the column "Share Quantity" covered by the Transaction.

"*Specified Future Contracts*" means each future contract referencing the Reference Security and identified by both Party A and Party B in Schedule 1 as a "Specified Future Contract".

"*Schedule 1 Variation Notice*" means, in regards to the Reference Transaction set out in Schedule 1, a notice issued by the Calculation Agent that replaces and supersedes Schedule 1, attached to this EUR Equity ForwardContract

6. **Account Details:**

   **Account Details for Party A:**

   | | |
   |---|---|
   | For EUR: | [•] |
   | SWIFT code: | [•] |
   | IBAN: | [•] |
   | A/C no: | [•] |
   | For credit: | [•] |

   **Account Details for Party B:**

   | | |
   |---|---|
   | For EUR: | [•] |

CONFIDENTIAL / PRIVILEGED – SUBJECT TO 502(d) ORDER         WH_MDL_00394157

      SWIFT code:    [•]
      A/C no:    [•]
      For credit:    [•]

All account details laid out above shall be re-confirmed between the parties upon the time of any payment or delivery, and are permitted to change from time to time in accordance with administrative processes.

7. **Notices:**

    **to Party A at:**
    [•]
    E-Mail: [•]

    **to Party B at:**
    [•]
    E-Mail: [•]

8. **Offices:**

The Office of Party A for this Transaction is [•].

The Office of Party B for this Transaction is [•].

CONFIDENTIAL / PRIVILEGED – SUBJECT TO 502(d) ORDER    WH_MDL_00394158

9. **Representations**

   Each party will be deemed to represent to the other party on the date on which it enters into this Transaction that (absent a written agreement between the parties that expressly imposes affirmative obligations to the contrary for this Transaction):

   (i) **Non-Reliance.** It is acting for its own account, and it has made its own independent decisions to enter into this Transaction and as to whether this Transaction is appropriate or proper for it based upon its own judgment and upon advice from such advisers as it has deemed necessary. It is not relying on any communication (written or oral) of the other party as investment advice or as a recommendation to enter into this Transaction; it being understood that information and explanations related to the terms and conditions of this Transaction shall not be considered investment advice or a recommendation to enter into this Transaction. No communication (written or oral) received from the other party shall be deemed to be an assurance or guarantee as to the expected results of this Transaction.

   (ii) **Assessment and Understanding.** It is capable of assessing the merits of and understanding (on its own behalf or through independent professional advice), and understands and accepts, the terms, conditions and risks of this Transaction. It is also capable of assuming, and assumes, the risks of this Transaction.

   (iii) **Status of Parties.** The other party is not acting as a fiduciary for, or an adviser to it in respect of this Transaction.

Please confirm that the foregoing correctly sets forth the terms of our agreement by having an authorised officer sign this Confirmation and return it via facsimile to:

   Attention:   [•]
   Telephone:   [•]
   Facsimile:   [•]

**CONFIDENTIAL / PRIVILEGED – SUBJECT TO 502(d) ORDER**                                        **WH_MDL_00394159**

This Agreement and any non-contractual obligations arising out of or in connection with it are governed by, and shall be construed in accordance with English law.

Yours sincerely,

**[Investor]**

By: _____

Name: _____

Title:    Authorised Signatory

Confirmed as of the date first written above:

**[Pension Plan]**

By: _____

Name: _____

Title: _____

## SCHEDULE 1

| Reference Transaction | Reference Security | Issuer Name | Share Quantity | Specified Future Contract | Reference Transaction Collateral Amount | Applicable Spread | Fixed Rate Payer Payment Date |
|---|---|---|---|---|---|---|---|
| 1 | ISIN [•] | [•] | [•] | Ref:<br>Ref: | [•] | [•] | [•] |

CONFIDENTIAL / PRIVILEGED – SUBJECT TO 502(d) ORDER             WH_MDL_00394161

Schedule 1 Variation Notice

| Reference Transaction | Reference Security | Issuer Name | Share Quantity | Specified Future Contract | Reference Transaction Collateral Amount | Applicable Spread | Fixed Rate Payer Payment Date |
|---|---|---|---|---|---|---|---|
| 1 | ISIN [•] | [•] | [•] | Ref:<br>Ref: | [•] | [•] | [•] |

*Fixed Amount Rebate Amount:*_____

CONFIDENTIAL / PRIVILEGED – SUBJECT TO 502(d) ORDER        WH_MDL_00394162